IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| NEAL GLESSNER | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No.: SAG-22-03333 |
| v. | * | |
| | * | |
| CHARDAN, LLC | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In his First Amended Complaint, Plaintiff Neal Glessner, a white male over the age of fifty, ECF 17 ¶ 26, brings two counts of unlawful discrimination under 42 U.S.C. § 1981 (Count I) and 42 U.S.C. § 2000a (Count II) against Defendant CharDan, LLC ("CharDan"), the owner of Dan's Restaurant and Tap House ("Dan's Restaurant"). ECF 17 ("Federal Court Complaint" or "First Amended Complaint). Glessner complains that he was banned from the dining establishment on the basis of his age and race. *Id.* CharDan has filed a motion to dismiss, or, in the alternative, a motion to stay, ECF 24, which Glessner opposed, ECF 25. CharDan has filed a reply. ECF 26. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, CharDan's motion will be denied.

I. BACKGROUND

The following facts are derived from the First Amended Complaint, ECF 17, and are taken as true for purposes of evaluating the motion.

On or about Friday, February 18, 2022, Glessner visited Dan's Restaurant and ordered two burgers and a salad to-go. ECF 17 ¶ 10. Approximately forty-five minutes later, around 8:00 P.M., Glessner commented to his friend, who was sitting at the bar, that his to-go order was taking too

long. *Id.* ¶ 11. A server overheard Glessner's comment and asked for his patience, explaining that the restaurant was "very busy." *Id.* ¶ 12. Glessner responded that it should not take that long to make two burgers, and the server noted that Glessner had ordered more than just the two burgers. *Id.* ¶ 13. Glessner responded, "tongue-in-cheek," that he did not believe it "took too long to 'cook' a salad." *Id.* ¶ 14. At this point, the server went to the kitchen and returned with his to-go order. *Id.* ¶ 15. Glessner then left the restaurant. *Id.*

Shortly thereafter, a Manager of Dan's Restaurant approached Glessner's friend, who was still sitting at the bar, and told the friend to "tell [Glessner] that he is no longer allowed at Dan's." *Id.* ¶ 16. The friend refused. *Id.* ¶ 17. At this point, the Manager informed the friend that both he and Glessner were barred from the premises. *Id.* ¶ 18. The Manager stated, "You old, white people act like you own everything. Get the fuck out of here!" *Id.* ¶ 25. An officer of the Boonsboro Police Department arrived approximately 8:30 P.M., and the friend informed the officer that he had been "discriminated against." *Id.* ¶ 22. The friend later informed Glessner of the interaction and the manager's statements. *Id.* ¶¶ 24–25.

Glessner subsequently exchanged messages with various employees and owners of Dan's Restaurant, including Daniel N. Aufdem-Brinke (one of the members of CharDan), via Facebook and other media regarding Glessner's prohibition from entering the premises. *Id.* ¶¶ 27–53. Since the incident, Glessner alleges that he is aware of "approximately a half-dozen other white men who have been barred from Dan's for otherwise inexplicable reasons." *Id.* ¶ 57. Based on these events, Glessner alleges that CharDan, acting through its Manager, "harbored special insidious hate towards white people, and would not have banned Plaintiff or his Friend if they had differently colored skin." *Id.* ¶ 58.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a

3

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Finally, federal courts reviewing a 12(b)(6) motion may take judicial notice of matters of public record, including court filings, and may consider documents incorporated into a complaint by reference without converting the motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### III. DISCUSSION

In its motion to dismiss, CharDan raises three reasons why this Court should dismiss Glessner's claims. First, CharDan argues that Glessner has not returned to the restaurant and therefore cannot allege a denial of services. ECF 24-1 at 5–7. Second, CharDan argues that Glessner has failed to allege any discriminatory intent based on race. *Id.* at 7–9. Finally, CharDan argues that this Court should abstain, or at minimum stay the case, given an ongoing parallel proceeding in the Circuit Court for Washington County, Maryland. *Id.* at 9–12. This Court first addresses CharDan's procedural abstention argument, and then turns to its substantive challenges.

#### A. Abstention

Prior to filing the instant action, Glessner filed a parallel case in the Circuit Court for Washington County, Maryland. *See* ECF 24-3 (State Court Complaint). The facts alleged in the State Court Complaint are nearly identical to those alleged in the present case, and the parties are similar, except that the State Court Complaint includes a manager of Dan's Restaurant as an additional defendant. *Compare id.*, *with* ECF 17. For this reason, CharDan argues that this Court should abstain or at least stay the case pending the resolution of the state court case.

It is a well-recognized rule "that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)) (internal quotation marks omitted). "However, under the *Colorado River* doctrine, a federal court may abstain from exercising jurisdiction over a duplicative federal action for purposes of 'wise judicial administration.'" *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). When determining whether to abstain, "the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can

suffice under *Colorado River* to justify the surrender of that jurisdiction." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)).

"In deciding whether such exceptional circumstances exist, a court must first determine whether the federal and state actions are parallel. State and federal suits are parallel only 'if substantially the same parties litigate substantially the same issues in different forums.'" *Id.* at 168 (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). Of note, "even state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *Id.*

Here, the facts and parties are nearly identical. Allegations in the Federal Court Complaint are taken verbatim from the State Court Complaint. A distinction, however, arises from the available remedies. Count I of the State Court Complaint alleged unlawful discrimination in a place of public accommodation under Maryland law, MD. CODE ANN., STATE GOVERNMENT, § 20-304. Similarly, Count II of Glessner's Federal Court Complaint alleges unlawful discrimination in a place of public accommodation under federal law, 42 U.S.C. § 2000a. Although nearly identical statutes, there is no private cause of action under the Maryland law. *See Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 407 (D. Md. 2022) ("Maryland law does not give rise to a private right of action for discrimination in places of public accommodation."); *see also M.R. by and through N.R. v. Tajdar*, 17-cv-3836-TDC, 2018 WL 6050888, at *5 (D. Md. Nov. 19, 2018) ("While Maryland law 'expressly provides the right to file a civil action' for other forms of discrimination, there is 'no comparable provision' creating a private right of action for public accommodation discrimination."). For this reason, the Circuit Court for Washington County dismissed Count I of Glessner's State Court Complaint. *See* ECF 24-4; ECF 25 at 11.

In contrast, assuming a plaintiff first provides the required notice to the relevant state authority, *see* 42 U.S.C. § 2000a-3(c), Section 2000a-3 "authorizes a private right of action to enforce Title II." *Hodge v. Cordish Companies Inc.*, No. CV ELH-17-254, 2017 WL 3007069, at *5 (D. Md. July 14, 2017). Therefore, although Glessner has no remedy under state law through his private cause of action, he does have injunctive or declaratory relief available to him under federal law. *Id.* ("§ 2000a-3 only authorizes suits for injunctive or declaratory relief; it does not permit suits for damages."). Thus, the scope of remedies available to Glessner are different under federal and state law, and abstention is unwarranted.

B. **Failure to State a Claim**

i. **§ 1981 Claim (Count I)**

Section 1981 "grants all persons within the jurisdiction of the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *McGill v. Koros, LLC*, No. CV BPG-20-3191, 2023 WL 2664229, at *3 (D. Md. Mar. 28, 2023) (quoting 42 U.S.C. § 1981). "To prove a § 1981 claim, [ ] a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). The plaintiff must also "prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

"To state a cause of action in a § 1981 action not involving employment, a plaintiff must show: (1) he . . . is a member of a racial minority[1]; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 734 (D. Md. 2001) (internal quotation marks omitted); *see also Hodge v. Giant of Maryland LLC*, No. PWG-21-554, 2022 WL 4080317, at *3 (D. Md. Sept. 6, 2022); *Jarvis v. Wells Fargo Bank, N.A.*, No. DLB-21-687, 2022 WL 1663568, at *4 (D. Md. May 25, 2022). A § 1981 claim may be proven by either direct evidence or the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 972 (1973). *See Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1136 (4th Cir. 1988) (burden-shifting standard applies to suits under § 1981).

CharDan first challenges whether Glessner alleged intentional discrimination on the basis of race. Taken as true, Glessner's First Amended Complaint includes sufficient allegations of such discrimination. As alleged, a manager of Dan's Restaurant stated, "You old, white people act like you own everything. Get the fuck out of here!" at the same time he banned Glessner and his friend from the restaurant. ECF 17 ¶ 25. Drawing all reasonable inferences in favor of the plaintiff, the manager's statement permits the inference that but for Glessner's white race, the manager would not have denied access to Dan's Restaurant. Thus, Glessner has alleged a § 1981 claim because he

---

[1] The present case involves "reverse discrimination" in that a member of the white majority is alleging racial discrimination. Although it "would seem to be unassailably correct based on the plain language of the statute" that a white person could not bring a claim under Section 1981, the Supreme Court has held that "Title VII protects whites as well as minorities." *Farmer v. Ramsay*, 43 F. App'x 547, 553 n.8 (4th Cir. 2002); *Lucas v. Dole*, 835 F.2d 532, 534 (4th Cir. 1987); *see also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976) ("While a mechanical reading of the phrase 'as is enjoyed by white citizens' would seem to lend support to respondents' reading of the statute, we have previously described this phrase simply as emphasizing 'the racial character of the rights being protected[.]'").

has adequately pled CharDan denied him the opportunity to contract for services at the restaurant under circumstances giving rise to an inference of unlawful race discrimination.

The fact that Glessner was not present at the time the manager made the statement does not change this analysis. *Cf. Eddy v. Waffle House, Inc.*, 482 F.3d 674, 678 (4th Cir. 2007), *cert. granted, judgment vacated on other grounds*, 554 U.S. 911 (2008) ("It is irrelevant whether the customer heard the epithet for himself or whether he came to know through somebody else that such language is being used. In either case, a reasonable person would feel it to be a hostile environment.") (concluding that the use of an unambiguously racial epithet constitutes *prima facie* evidence of intent to discriminate on the basis of race).

Next, CharDan challenges whether Glessner has been denied a contractual interest. *See Denny*, 456 F.3d at 434. For restaurant service, "[S]ection 1981 has been read to protect against the discriminatory denial of 'the accouterments that are ordinarily provided with a restaurant meal.'" *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 557 (D. Md. 2005) (quoting *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 702–03 (D. Md. 2000)); *see also Arguello v. Conoco, Inc.*, 330 F.3d 355, 360 (5th Cir. 2003) ("[D]ining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased"). Thus, a ban from a restaurant constitutes a sufficient interference with the ability to contract for the restaurant's services.

CharDan further argues that Glessner has not suffered an interference with this contractual interest because he has not attempted to return to Dan's Restaurant since the incident. ECF 24-1 at 5. No such proof is required. In Glessner's First Amended Complaint, he asserts that "Plaintiff visited Dan's for dinner as Plaintiff has done many times before and, but for the actions of the Defendant described in this Complaint, would have done many times since." ECF 17 ¶ 9. He later

9

attempts to contact restaurant management to ask them to "reverse the decision so that [he] could resume patronizing the establishment in peace." ECF 17 ¶ 33. Such efforts reflect attempts to resume business with the restaurant. Further, there is ample evidence that Glessner is, in fact, banned from the restaurant. *E.g.*, ECF 17 ¶ 37 (Facebook post by a manager of the restaurant noting that Glessner "was recently asked not to return to Dan's because he has mistreated our staff and shown blatant disrespect for our rules and hours of operation."). The ban itself is a denial of the restaurant's services.

In support of its argument, CharDan cites *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 193 (D. Md. 2003), which required "proof that (1) plaintiffs are members of a protected class; (2) they sought to pay for an item in a manner ordinarily accepted by defendant; and (3) they were denied the opportunity to make the purchase in that manner under circumstances which rationally support an inference of unlawful discrimination." This case is inapposite for a few reasons. First, *Buchanan* dealt with a motion for summary judgment, not a motion to dismiss, and therefore analyzed a prima facie case of discrimination. *See id.* at 189, 193. At the motion to dismiss stage, a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss[.]" *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see also McGill v. Koros*, LLC, No. CV JKB-20-03191, 2021 WL 4170402, at *6 (D. Md. Sept. 14, 2021) ("Plaintiffs are not required to 'plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss' but must meet the standard established in *Iqbal* and *Twombly*."). Additionally, *Buchanan* itself notes that "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Buchanan*, 217 F.R.D. at 193 (internal quotation marks omitted). And finally, plaintiffs in *Buchanan* relied on the amassment of several types of

circumstantial evidence to support their allegations of racial discrimination. Here, the manager's direct statement regarding Glessner's white race in conjunction with his directive to refuse service to Glessner in the future is sufficient, on its own, to state a plausible claim.

For all of these reasons, Glessner alleges a plausible claim under § 1981.

### ii.      § 2000a Claim (Count II)

"Title II of the Civil Rights Act . . . provides: 'All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race [and] color[.]" *Hodge*, 2017 WL 3007069, at *5 (quoting 42 U.S.C. § 2000a(a)). A restaurant qualifies as a "place of public accommodation" under the statute. 42 U.S.C. § 2000a(b)(2). To prevail, a plaintiff "must establish that (1) the restaurant affects commerce; (2) the restaurant is a public accommodation; and (3) the restaurateur denied plaintiff full and equal enjoyment of the establishment." *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 709 (D. Md. 2000). To sufficiently allege that a defendant acted because of an individual's race or color, there must be "some connective thread between the alleged mistreatment and the protected status." *See Gough v. Rock Creek Sports Club*, No. 19-cv-3533-PJM, 2021 WL 795447, at *2 (D. Md. Mar. 2, 2021).

CharDan makes the same challenges as above, arguing that Glessner failed to allege intentional discrimination or the denial of restaurant services. As discussed, taken in the light most favorable for Glessner, the manager's statement provides the "connective thread" between his race-based remarks and his decision to ban Glessner from the premises. Further, allegations that the manager has banned Glessner from returning to the restaurant is sufficient to show the denial of the "privileges" of a restaurant. Although some courts have stated the elements of a § 2000a claim to include the "attempt[] to exercise the right to full benefits and enjoyment of a place of

11

public accommodation," *see Taylor v. Ahold*, No. 3:16CV241, 2017 WL 377935, at *1 (E.D. Va. Jan. 23, 2017), *aff'd sub nom. Taylor v. Royal Ahold NV*, 694 F. App'x 931 (4th Cir. 2017), Glessner has alleged facts demonstrating his attempt to connect with the restaurant and lift his ban so that he may return. ECF 17 ¶¶ 28, 30. This is sufficient to demonstrate an attempt to exercise the benefits and enjoyment of a restaurant. Glessner need not have physically returned, after having been instructed not to return, in order to bring a claim.

Thus, for the same reasons discussed above, Glessner alleges a plausible claim under § 2000a.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss, ECF 24, is **DENIED**. A separate Order follows.


Dated: July 5, 2023                                  /s/
                                        Stephanie A. Gallagher
                                        United States District Judge